IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WANDA F. SMITH,

      Plaintiff,

vs.                                                                                              Civil No. 99-1100 MV/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, February 14, 2000 **[docket # 8]**.[1] The Commissioner denied Plaintiff's request for Social Security Disability Insurance. Plaintiff alleges a disability which commenced June 1, 1993 due to fibromyalgia and heart problems. She was 62 on her alleged onset date.

2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the application at step four, concluding that Ms. Smith had a residual functional capacity for a wide range of sedentary work and upon vocational expert testimony that she could return to past relevant work as a secretary, accounts manager, and collections clerk, which were described as semi-skilled, sedentary work. She has completed high school.

3. The Appeals Council denied Ms. Smith's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

---

[1] The motion packet was actually filed with the Court on May 1, 2000, although the briefs were served on the parties on earlier dates.

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's step four finding is contrary to the evidence and the law; and (2) the ALJ failed to make full inquiry of Ms. Smith.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 404.1520(a - f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

7. Plaintiff retired in March 1991 and has been drawing social security retirement since she was age 63. Tr. at 50. She was diagnosed with fibromyalgia in 1993 by Dr. Suzanne Gray, a rheumatologist. She also has antiphospholipid syndrome, for which she takes coumadin and a history of transient ischemic attacks. These other impairments do not form the basis for Plaintiff's alleged errors in the present motion. Tr. at 59. Her main complaints as presented to the ALJ are fatigue, headaches and pain ("I hurt all over"). Tr. at 56. Ms. Smith also reported that she has symptoms of dizziness and headache when her coumadin level gets too low. Tr. at 59.

8. Ms. Smith takes Tylenol, 1/4 tablet at a time, for her fibromyalgia, and various other medications for the antiphospholipid syndrome. Tr. at 387. On a questionnaire she filled out in August 1994, Plaintiff stated that on her doctor's recommendation, she tapes band-aids at night to several fingers while extended to reduce stiffness in mornings. She also finds that she needs more sleep now, and takes medication to help her sleep, which sometimes helps. Tr. at 66, 121.

9. Plaintiff has a valid driver's license, but her husband does the driving. She needs to stop hourly to prevent back spasms. Tr. at 60. She and her husband share the cooking and shopping duties, but her husband does the vacuuming and heavy cleaning. Plaintiff does the dusting and some of the ironing. Id., & at 121. On "good days" she sweeps off the sidewalk. Tr. at 64.

10. Ms. Smith spends her day alternating between resting, watching television and exercising (walking in the yard or around the block). Id. She visits her son and his wife who live several blocks away, and sometimes plays bingo with friends. She also attends little league baseball to watch her grandsons play, up to four times a week in season, Tr. at 62, 121 but needs to get up and move around during the games, Tr. at 73. She no longer bowls because of past surgery on her right hand and does not go fishing anymore because she cannot cast. Tr. at 62. Plaintiff's husband stated that because of his wife's gripping difficulty with her right hand, writing even short notes takes longer. Tr. at 81. She used to enjoy gardening and canning, but now spends some time in the garden just pulling up dead rose blooms. Tr. at 62, 121.

11. She can care for her own hygiene, except that her husband will help her shampoo her hair because arms sometimes "go to sleep" if raised high above her head for a period of time. Tr. at 63, 65. He also helps her put on shoes if they are tight-fitting. She told the ALJ that she would

like to do "normal" things like rolling her own hair, filing her nails and showering by herself. Tr. at 77.

12. Ms. Smith told the ALJ that she can bend and squat, but has trouble getting up from a kneeling position and climbing stairs. Tr. at 65-66. Plaintiff stated that she can carry about five pounds of sugar and can manage a gallon, but has more trouble carrying things with her right hand. Tr. at 70. She can sit in a car for an hour before having to get out and stretch, but said that she didn't think she could sit that long at home. Tr. at 67. She stated that on a "good day" she can stand only about ten to fifteen minutes[2] and walk about four blocks. Tr. at 69. On other days, perhaps two or three times a month, she testified that she may have to lie down twenty or thirty minutes at a time and may not even get up to go to the bathroom.

**First Alleged Error**

13. Plaintiff alleges that the ALJ's step four finding is contrary to the evidence and the law. At step four, a claimant must show that he or she is unable to perform work done in the past.

14. Step four of the sequential analysis, at which the ALJ found Ms. Smith not disabled, is comprised of three phases. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96-8p. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity, i.e., must find that the claimant can perform work on a regular and continuing basis. In the second phase, the ALJ must determine the physical and mental demands of the claimant's past relevant work, and in the final phase, the ALJ determines whether the claimant has the ability to

---

[2] At this point in the hearing, her husband spoke out that she could stand about an hour or an hour and a half, although he was not testifying at that point. Tr. at 69.

meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. Id. (citing Henrie v. United States Dep't of Health & Hum. Servs., 13 F.3d 359, 361 (10th Cir. 1993)).

15.   Plaintiff contends the ALJ erred in the analysis at both the first and second phases, specifically, that the ALJ determined Ms. Smith's residual functional capacity to be at a "wide" range of sedentary work, Tr. at 38, but based the hypothetical posed to the vocational expert ("VE") on an ability to perform a "full" range of work. She also contends that in the phase one inquiry, the ALJ failed to take Ms. Smith's sitting limitation and complaints of fatigue into account in the hypothetical posed to the VE.

*First Phase of Step Four Inquiry*

16.   The hypothetical posed here, based on an ability to perform a "full" range of work, inferred that Plaintiff had no exertional limitations that interfered with her ability to work. Cmp. Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984) (grids may not be automatically applied when a claimant has significant non-exertional impairments); Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995) (claimant need not have ability to do full range of work when VE is consulted; rather, claimant need have ability only to perform one or more occupations with a significant number of available positions).[3]

17.   Although Defendant is correct that the ALJ relied in part on the VE's testimony to determine that Ms. Smith could perform past relevant work, the VE based his statements on the premise, as reflected in the hypothetical as posed, that there were no significant exertional

---

[3] Evans discussed a step five inquiry; however, a determination of residual functional capacity applies to both steps four and five. Winfrey, 92 F.3d at 1023, n.4 (claimant's RFC is relevant at both steps four and five).

limitations to consider, a premise which is not supported by the ALJ's own findings.  The ALJ conducted a legally proper credibility inquiry as to Plaintiff's complaints as to pain.  The ALJ listed all the relevant factors, including observable manifestations (which he acknowledged were usually absent in a diagnosis of fibromyalgia), Tr. at 37, activities of daily living and treatment.

18.  Based on consultative reports by physicians such as Dr. Kelly and Dr. Gray, who focused on Plaintiff's fibromyalgia-based complaints, the ALJ's concluded that Ms. Smith's pain is moderate and alleviated with medication and exercise.  Tr. at 40.  He also found that she exaggerated symptoms in order to "persuade this court to grant disability benefits."  Id.  See Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987) (recognizing that "some claimants exaggerate symptoms for purposes of obtaining government benefits, and deference to the factfinder's assessment of credibility is the general rule").  Because Plaintiff's symptoms were not constant, unremitting and wholly unresponsive to treatment, as would be required for a finding of disabling pain, the ALJ determined that while her pain symptoms necessitated limitations in lifting or prolonged walking or standing, they did not further reduce her residual functional capacity below a range of sedentary work.  Id.

19.  However, the ALJ made no determinations regarding Plaintiff's complaints of fatigue or sitting limitations.  While Plaintiff's fatigue may perhaps loosely be attributed to be part of her pain symptoms, which the ALJ found not to be disabling,[4] Plaintiff's sitting limitation was accepted by the ALJ in his findings, Tr. at 37, yet not included in the hypothetical posed to the

---

[4] Plaintiff's statement that "[t]he pain of fibromyalgia can cause fatigue" supports this connection.  Mem. at 4.

6

ALJ.[5]

20.    The ALJ should consult a vocational expert where a claimant cannot sit or stand for prolonged periods of time.  See Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993); see Kelley v. Chater, 62 F.3d 335, 337 (10th Cir. 1995)(plaintiff who could not sit for more than 30 minutes to an hour without alternating may be able to do sedentary work if VE called in to opine about jobs where he could alternate). The VE's testimony, therefore, should have but did not reflect Plaintiff's fatigue or postural limitations in opining that Ms. Smith could still perform past relevant work, including collections clerk or secretary.

*Second Phase of Step Four Inquiry*

21.    Plaintiff also alleges error in the second phase of the step four inquiry in that the ALJ did not determine the physical and mental demands of the claimant's past relevant work, thereby rendering the ALJ's phase three finding incorrect and not supported by substantial evidence.

22.    Defendant points out that the allegation is meritless because the VE was present during the testimony and had reviewed the record.  However, neither Plaintiff's testimony nor the evidence in the record indicates that an inquiry was made of the Plaintiff regarding any of the positions in which Ms. Smith worked, or of the VE regarding what physical or mental demands existed in these positions.  I find that the ALJ's findings at phase three cannot be reviewed

---

[5] Defendant argues that Plaintiff's attorney should have questioned the VE if she felt that the impairments were not described with sufficient specificity.  Resp. at 6.  However, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work, even while relying on information supplied by the VE at step four.  Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996).  It is premature to determine whether the ALJ was justified in excluding Plaintiff's fatigue from the hypothetical since the ALJ made no findings regarding whether the impairment was a significant impairment supported by the record.

because the inquiry conducted in the first two phases is incomplete and not supported by substantial evidence.

23. Thus, regarding Plaintiff's first alleged error, this case should be remanded to the Commissioner in order to conduct another step four analysis, in which (1) the ALJ should properly determine Plaintiff's residual functional capacity by including significant nonexertional limitations related to sitting and fatigue within a vocational consult unless the ALJ makes express credibility findings regarding these impairments, and also (2) to inquire into the physical and mental demands of Plaintiff's past relevant work.

**Second Alleged Error**

24. Plaintiff alleges that the ALJ failed to make full inquiry of Ms. Smith, taking as examples particular statements from the hearing where it appears that the ALJ is continually cutting off Plaintiff's testimony mid-sentence.

25. This allegation has no merit. Because most of the statements are truncated apparently for the sake of brevity, they are out of context as well. What seems at first impression to be the rapid-fire questions of the ALJ, interposed before Ms. Smith has completed her sentence, is more like an effort by the ALJ to move along the proceeding despite Plaintiff's tendency to be long-winded and to volunteer information that is either cumulative or insignificant.

26. As an example, Plaintiff cites to page 52 in the Transcript thus:

Q. But can you generally see all right to read and things like that?
A. I blur . . . . The doctor doesn't -- [indicating ALJ then "interrupted" Plaintiff].  Mem. at 7.

27. What the transcript actually states is:

Q. But can you generally see all right to read and things like that?

  A.  I blur. I don't know. I have a lot of blurring. I have a lot of visual problems and I don't know why. The doctor doesn't -- [ALJ then asked if Ms. Smith could "hear okay."]

28. In response to the ALJ's question about whether Plaintiff was able to dress herself, Plaintiff explained that it depended on the type of shoes she wore and how tight the shoes were -- until the ALJ switched the line of questioning to her ability to perform hygienic requirements. Tr. at 65; Mem. at 8.

29. As another example, Plaintiff presents another portion of the testimony from page 52 where Plaintiff discusses her symptom of fatigue. During that exchange, Plaintiff started to describe in considerable detail a part of her medical history that had questionable significance to the issues at hand -- however, that excerpt is omitted from the exchange presented in the brief. Mem. at 7. I find that the ALJ did not unduly interrupt Plaintiff except to move the testimony along.

30. Plaintiff contends that the ALJ should have questioned the Plaintiff further about her symptoms of fatigue, dizziness and headaches. While I agree that the ALJ should have made additional inquiry into Plaintiff's fatigue, see discussion, above, I find that the other impairments were adequately covered and that the ALJ sufficiently developed the record in those areas. See Henrie v. United States Dept of Health & Hum. Serv., 13 F.3d 359, 360 (10th Cir. 1993) (ALJ has a duty to fully develop the record).

31. The ALJ questioned Plaintiff about her headaches and was informed by Plaintiff that Tylenol afforded her relief from her migraines. Tr. at 74 (". . . I can take some Tylenol and that's it"). The hearing testimony contains various references to symptoms of dizziness and problems with her equilibrium. Tr. at 52, 59, 68, 75. She has been to two physicians to rule out seizure

disorder, Tr. at 126, 131, and Dr. Carey Suter opined that these episodes did not correlate with an epileptic phenomenon. Plaintiff told the ALJ that she tended to feel dizzy when her coumadin levels were low. Tr. at 59. I find that the ALJ made sufficient inquiry into these impairments without taking over the initial burden of proof, which initially rests on the claimant. See Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991) (citing Ray v. Bowen, 865 F.2d 222, 224 (10th Cir.1989)).

32.   In sum, I find that (1) the ALJ's step four finding is contrary to the evidence and the law; and (2) the ALJ did conduct a full inquiry of Ms. Smith.

## Recommendation

I recommend that Plaintiff's's Motion to Reverse and Remand for a Rehearing, **[docket # 8]** be granted and that this cause be remanded to the Commissioner in order to conduct another step four analysis, in which (1) the ALJ should properly determine Plaintiff's residual functional capacity by including significant nonexertional limitations related to sitting and fatigue within a vocational consult unless the ALJ makes express credibility findings regarding these impairments which eliminate them from consideration in a hypothetical, and also (2) to inquire into the physical and mental demands of Plaintiff's past relevant work.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE